**FILED**

**July 27, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 10:13 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **BRADLEY WILSON,** | ) | **Docket No. 2015-07-0143** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 50922-2015** |
| | ) | |
| **DANA HOLDING CORPORATION,** | ) | **Judge Amber E. Luttrell** |
| **Employer.** | ) | |

---

### COMPENSATION HEARING ORDER
### GRANTING EMPLOYER'S MOTION FOR INVOLUNTARY DISMISSAL
### UNDER TENNESSEE RULE OF CIVIL PROCEDURE 41.02(2)

---

This matter came before the Court on June 22, 2017, for a Compensation Hearing. The central legal issues are whether Bradley Wilson met his burden of establishing by expert medical proof that his bilateral carpal tunnel injury arose primarily out of and in the course and scope of his employment at Dana Holding Corporation (Dana) and whether Mr. Wilson gave proper notice of a work injury.

For the following reasons, the Court holds that Mr. Wilson did not establish by a preponderance of the evidence that he sustained an injury primarily arising out of and in the course and scope of his employment with Dana. Accordingly, the Court grants Dana's motion for involuntary dismissal under Rule 41.02(2).

### History of Claim[1]

*Facts and Procedural History*

Mr. Wilson worked for Dana as a press operator for three years. He worked on a production line assembling oil coolers, where he performed the same tasks repetitively,

---

[1] In determining this claim, the Court takes judicial notice of testimony heard at the prior in-person Expedited Hearing. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 457 n.1 (Tenn. 2012) ("we are permitted to take judicial notice of the facts from earlier proceedings in the same action").

1

often for eleven hours per day. He testified he regularly used a rubber mallet to remove pieces off a fixture during the assembly process and worked five to seven days almost every week. Mr. Wilson alleged an injury to both wrists diagnosed as carpal tunnel syndrome, which he associated with his repetitive, strenuous work and extensive weekly work hours.

Mr. Wilson initially sought treatment from his family physician, Dr. Ken Berry, for shoulder and hand complaints and took intermittent FMLA leave from work. Dr. Berry ultimately referred Mr. Wilson to Dr. Blake Chandler, an orthopedist, for evaluation of his complaints. Following a nerve conduction study, Dr. Chandler diagnosed moderately severe bilateral carpal tunnel syndrome on May 13, 2015.

Prior to his carpal tunnel diagnosis, Dana terminated Mr. Wilson's employment on May 1, 2015, for violation of its attendance policy. According to Dana, Mr. Wilson was scheduled to return to work from FMLA leave on April 29, 2015; however, he did not return and did not contact Dana for three consecutive days contrary to its attendance policy.

Mr. Wilson notified Dana of his alleged work injury by letter dated June 4, 2015. The letter advised Dana of his carpal tunnel diagnosis, requested a panel of physicians, and requested to file a workers' compensation claim. Mr. Wilson also sent an email dated June 5, 2015, to Ms. Andrea Gooch, Dana's Human Resources Manager, reporting an injury and requesting a panel. Dana did not offer Mr. Wilson a panel. Instead, it denied the claim, stating the basis as "late reporting and no report of an accident."

*First Expedited Hearing*

Mr. Wilson filed an expedited hearing request seeking medical and temporary disability benefits. Following an evidentiary hearing, the Court held Mr. Wilson was likely to prevail at a hearing on the merits regarding the issues of notice and medical causation, ordered medical benefits, and denied temporary disability benefits. The Court held Mr. Wilson gave adequate notice of his work injury and came forward with sufficient medical proof, based on Dr. Berry's opinion from which the Court concluded he was likely to prevail at a hearing on the merits.

Specifically, the Court determined Dr. Berry and Dr. Chandler provided the only expert opinions addressing medical causation. Mr. Wilson selected neither doctor from a panel. Thus, neither opinion carried a statutory presumption of correctness. Dana relied on Dr. Chandler's opinion, who responded in a letter, "I cannot say with any medical certainty that the bilateral carpal tunnel syndrome is more than 50% caused by his work." Mr. Wilson relied on Dr. Berry's opinion, who stated in an affidavit, "It is my professional opinion, considering Mr. Bradley Wilson's past medical and work history, that his most recent employment as a Press Operator for Dana Corporation; [sic] is the

2

sole cause for his severe bilateral carpal tunnel syndrome."

The Court weighed the conflicting opinions and found Dr. Chandler's opinion lacking because it failed to state any basis for his opinion nor did it indicate he was aware of Mr. Wilson's job position at Dana or his work duties. In contrast, the Court held Dr. Berry's opinion more persuasive based on his familiarity with Mr. Wilson's job at Dana and duties as a press operator, his knowledge of Mr. Wilson's medical history, and his unequivocal opinion that Mr. Wilson's work as a press operator was the sole cause for his severe bilateral carpal tunnel syndrome.

Under the expedited hearing order, Dana provided Mr. Wilson a panel, from which he selected Dr. Michael Dolan for treatment. Dr. Dolan confirmed the diagnosis of bilateral carpal tunnel syndrome and performed surgery on Mr. Wilson's arms. The parties agreed that Dana initiated temporary total disability benefits during his treatment with Dr. Dolan. Dr. Dolan released Mr. Wilson at maximum medical improvement on August 25, 2016, following extensive post-operative treatment. Dr. Dolan assigned a three-percent permanent impairment rating to the body as a whole.

*Second Expedited Hearing*

Dana filed a second expedited hearing request captioned "Motion to Terminate Temporary Total Disability Benefits." Dana asserted it initiated temporary total disability payments while Dr. Dolan had Mr. Wilson on restricted duty. Dana submitted it continued paying temporary benefits beyond Mr. Wilson's attainment of MMI on August 25, 2016, because it was unsure whether it could terminate temporary disability benefits absent a court order and whether Tennessee Code Annotated 50-6-234 applied. The Court held an evidentiary hearing where Mr. Jason Almand, Dana's Health and Safety Manager, testified that Dr. Dolan released Mr. Wilson to work with a twenty-pound lifting limit on June 27, 2016. He further testified that Dana could have accommodated Mr. Wilson's restriction but for the violation of Dana's attendance policy. Ms. Gooch also testified by affidavit regarding the attendance policy and the circumstances surrounding Mr. Wilson's termination.

Following the second expedited hearing, the Court held Dana presented sufficient proof that Mr. Wilson's actions precipitating his dismissal qualified as misconduct under ordinary workplace rules and his violation of the attendance policy was the true motivation for his termination. The Court concluded Mr. Wilson's entitlement to temporary disability benefits ceased on June 27, 2016. The Court further held Tennessee Code Annotated 50-6-234(b) (2015) did not apply in this case and Mr. Wilson was not entitled to additional temporary disability subsequent to his attainment of MMI.

3

*Summary Judgment*

Following the completion of Mr. Wilson's treatment, Dana took Dr. Dolan's deposition for its expert medical proof. In his deposition, Dr. Dolan testified in a couple of different ways that he "cannot state that Mr. Wilson's employment at Dana was more than fifty-percent responsible for his carpal tunnel complaints." As a basis for his opinion, Dr. Dolan testified, "The underlying cause of carpal tunnel is unknown." Dana also obtained Dr. Chandler's C-32, in which he checked "no" to the question, "Was the employment activity more likely than not, primarily responsible for the injury or primarily responsible for the need for treatment?"

Subsequently, Dana filed a Motion for Summary Judgment and contended Mr. Wilson's evidence was insufficient to establish the essential element of medical causation. Specifically, Dana argued Dr. Berry's causation opinion was insufficient to overcome the statutory presumption of correctness afforded Dr. Dolan's opinion. In opposing Dana's motion, Mr. Wilson relied on Dr. Berry's causation opinion and disputed that Dr. Dolan was familiar with his work duties when he gave his causation opinion. Based on the proof produced by Mr. Wilson at the summary judgment stage, the Court denied the motion.

*Compensation Hearing*

At the Compensation Hearing, Mr. Wilson testified he has not sought additional medical treatment for his carpal tunnel condition since Dr. Dolan released him. Mr. Wilson has not worked for another employer since his termination from Dana. He currently works odd jobs for income for his family and estimated he earns on average "anywhere from $500 to $1,000 per month."

Regarding causation, Mr. Wilson did not submit an expert medical opinion from Dr. Berry or any physician into evidence stating that his carpal tunnel injury arose primarily out of his employment at Dana. Instead, Mr. Wilson challenged Dr. Dolan's medical opinion by testifying that Dr. Dolan informed him at his first visit that he was to provide treatment for Mr. Wilson's condition and not a causation opinion. Mr. Wilson further challenged Dr. Dolan's and Dr. Chandler's causation opinions, arguing neither doctor knew his specific job duties at Dana. For these reasons, Mr. Wilson contended their opinions lacked credibility and the Court should not consider them.

At the close of Mr. Wilson's proof, Dana moved for Involuntary Dismissal under Tennessee Rule of Civil Procedure 41.02(2). The Court took the motion under advisement and allowed Dana to present its evidence.

For its proof, Dana renewed its notice argument and contended Mr. Wilson did not establish medical causation. In support of its notice defense, Dana employees Keith

4

Henegar, Ms. Gooch, and Mr. Almand testified.

Mr. Henegar testified he was formerly "over all [Dana] maintenance employees," and Mr. Wilson "never reported issues with his hands to him." On cross examination, Mr. Henegar testified he did not have direct contact with Mr. Wilson very often, stating he was "spread pretty thin over three buildings."

Ms. Gooch was the custodian of personnel records for the plant. She testified regarding the circumstances surrounding Mr. Wilson's FMLA leave and termination. She also testified regarding her receipt of Mr. Wilson's June 4, 2015 letter, in which he first notified Dana of his alleged work injury. Prior to the letter, she stated she had no notice of his injury.

Mr. Almand was the local contact for Dana's workers' compensation claims. He echoed Ms. Gooch's testimony regarding Mr. Wilson first notifying Dana of his work injury in the June 4 letter. Mr. Almand further testified that Dana paid Mr. Wilson temporary total disability benefits from March through September 2016, representing twenty-eight weeks of benefits for a total payment of $17,593.52. Dana argued this amount represented both the temporary disability benefits to which Mr. Wilson would have been entitled and an overpayment of temporary disability for benefits paid subsequent to his attainment of MMI.

For medical proof, Dana relied on the causation opinions expressed in Dr. Dolan's deposition and Dr. Chandler's C-32. It argued Dr. Dolan's opinion carries a presumption of correctness and Mr. Wilson failed to offer any expert medical opinion to rebut Dr. Dolan's testimony.

## Findings of Fact and Conclusions of Law

Mr. Wilson, as the employee in a workers' compensation claim, has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At a Compensation Hearing, Mr. Wilson must establish by a preponderance of the evidence that he is entitled to the requested benefits. *Willis v. All Staff,* TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2016).

### *Motion to Dismiss*

Dana moved for involuntary dismissal at the close of Mr. Wilson's proof under Tennessee Rule of Civil Procedure 41.02(2), which provides:

After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without

5

waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

Dana argued Mr. Wilson failed to prove medical causation because he did not offer any expert medical proof of causation and his testimony, alone, as a lay witness, is insufficient to prove causation. The Court agrees.

To prove a compensable injury, Mr. Wilson must show that his alleged injury arose primarily out of and in the course and scope of her employment. Tenn. Code Ann. § 50-6-102(14). To do so, he must show an incident, or specific set of incidents, identifiable by time and place of occurrence, caused his injury. *Id.* at § 50-6-102(14)(A). Further, he must show, "to a reasonable degree of medical certainty that [the employment] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *Id.* at § 50-6-102(14)(C).

Applying these principles to these facts, the Court cannot find that Mr. Wilson met this burden. Specifically, Mr. Wilson introduced no medical proof into evidence at the compensation hearing to establish that his employment activities at Dana contributed more than fifty percent in causing his carpal tunnel syndrome considering all causes. Absent any medical opinion regarding the cause of Mr. Wilson's carpal tunnel syndrome, he cannot show "to a reasonable degree of medical certainty" that his work contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes."

The Court recognizes Mr. Wilson disputes Dr. Dolan's and Dr. Chandler's conclusions; however, Mr. Wilson's disagreement with the physicians' opinions, while genuine, is legally insufficient to refute their conclusions. Neither Mr. Wilson nor the Court has the medical qualifications to revise the doctors' medical opinions. As our Appeals Board observed, "Judges are not well-suited to second guess a medical expert's treatment, recommendations, and/or diagnoses absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record." *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8 (Aug. 18, 2015).

Accordingly, the Court grants Dana's Motion for Involuntary Dismissal.

*Request for Repayment of Temporary Disability*

Finally, given the holding in this case, the Court turns to Dana's argument that it is entitled to recover from Mr. Wilson temporary disability benefits of $17,593.52. This amount represented the temporary benefits to which Mr. Wilson would have been entitled had he proven a compensable claim and Dana's overpayment to Mr. Wilson subsequent

to his attainment of MMI. Dana further raised as a defense in the May 3, 2017 DCN that "Employer is due a credit for overpayment of temporary disability benefits." The Court notes Dana did not cite any authority supporting its position it is entitled to repayment of TTD.

Upon review, the Court finds no authority from the Appeals Board providing guidance under the 2013 Reform Act for a trial court's consideration of such a request. Therefore, the Court turns to Tennessee authority on the similar issue of whether an employee might be compelled to repay a TTD overpayment in the absence of an award of permanent disability.

In *Frazier v. AFG Indus.*, No. 03S01-9308-CV-00058, 1994 Tenn. LEXIS 396, at *6 (Tenn. Workers' Comp. Panel June 14, 1994), the court noted the issue was, at that time, "apparently [one] of first impression in Tennessee." Looking to other jurisdictions, the court noted New Mexico had addressed the issue in at least two cases. The panel then "paraphrased" certain guidelines from those cases to follow in future Tennessee "cases of this nature." *Id.* at *8. Namely, when considering whether to order repayment of TTD, a court should consider 1) the culpability of the employee, if any, in accepting the TTD payments; 2) the negligence, if any, of the employer in making the overpayments; and 3) both the employee's ability to repay the TTD and the hardship upon him if ordered to do so. *Id.* The panel described these factors as "the dimensions of what constitutes fundamental fairness." *Id.* at *8-9.

Importantly, in *Frazier*, "there was no evidence introduced in the trial court concerning the reasons for the overpayment, nor was there an examination of any of the circumstances surrounding the payment of the temporary total disability." *Id.* at *9. The panel noted that such examination "should be done before ordering or denying repayment" of TTD. *Id.*

Here, the Court notes the absence of any testimony at the compensation hearing regarding the specific breakdown of the amounts and dates of temporary disability benefits paid. The Court further notes the absence of sufficient testimony at the compensation hearing concerning the "fundamental fairness" guidelines in *Frazier*. Given the lack of this information and the relative novelty of this question under the 2013 Reform Act, the Court reserves ruling on Dana's request and will entertain a post-trial motion and response on this issue.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Wilson's case against Dana and its workers' compensation carrier is dismissed with prejudice against refiling it.

2. Costs of this cause of $150.00 are assessed against Dana under Tenn. Comp. R.

7

and Reg. 0800-02-21-.07 (2016), to be paid within five days of this order becoming final.

3. Dana shall prepare and file a statistical data form within ten business days of the date of this order under Tennessee Code Annotated section 50-6-244 (2016).


**ENTERED this the 27th day of July, 2017.**

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**


## APPENDIX

Stipulations of Fact:

1. The alleged date of injury is May 1, 2015.
2. Mr. Wilson is thirty-one years of age and resident of Benton County, Tennessee.
3. Mr. Wilson has a twelfth-grade education.
4. Mr. Wilson received authorized medical care with Dr. Dolan.
5. Mr. Wilson's maximum medical improvement date is August 25, 2016.
6. The compensation rate is $628.34.
7. Mr. Wilson has not returned to work for Dana due to his termination for cause.

Exhibits:

1. Dr. Dolan's Deposition and Exhibits
2. Dr. Chandler's C-32
3. Notice of Medical Records Certification Filing- Dr. Dolan
4. Wage Statement
5. The Berry Clinic note dated April 24, 2015
6. Medical records of Drs. Michael Dolan and Blake Chandler
7. Dana's Employee Counseling Sessions
8. Dr. Berry's off work note
9. Separation Notice
10. Employee's June 4, 2015 notice letter

Technical record:[2]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Expedited Hearing Order Granting Medical Benefits and Denying Temporary Disability Benefits
5. Employee's Motion of Contempt
6. Employer's Motion to Reconsider
7. Order Denying Employee's Motion for Contempt and Denying Employer's Motion to Reconsider
8. Employer's Motion to Terminate Temporary Total Disability Benefits
9. Second Expedited Hearing Order
10. Initial Hearing Order
11. Motion for Relief from Initial Hearing Order
12. Order Denying Employer's Motion for Relief from Initial Hearing Order
13. Employer's Motion for Summary Judgment
14. Concise Statement of Undisputed Material Facts in Support of Employer's Motion for Summary Judgment
15. Memorandum of Law in Support of Employer's Motion for Summary Judgment
16. Employer's Notice of Filing Exhibits
17. Amended Scheduling Hearing Order Resetting Compensation Hearing
18. Employee's Position Statement
19. Employee's Response to Employer's Concise Statement of Undisputed Material Facts
20. Employee's Notice of Filing Exhibits
21. Post-Discovery Petition for Benefit Determination
22. Post-Discovery Dispute Certificate Notice
23. Order Denying Employer's Motion for Summary Judgment
24. Employer's Witness and Exhibit List
25. Employer's Pre-Compensation Hearing Position Statement
26. Employee's Pre-Compensation Hearing Statement
27. Employer's Pre-Compensation Hearing Statement of Employer

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of July, 2017.

| Name | First Class Mail | Via Email | Service sent to: |
|---|---|---|---|
| Bradley Wilson, Self-Represented Employee | X | X | 935 Chalk Hill Church Rd. Camden, TN 38320 Bwoldschool65@yahoo.com |
| Terri Bernal, Esq., Employer's Counsel | | X | tbernal@chartwelllaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov